# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1505
www.liddlerobinson.com

E-mail: apaparella@liddlerobinson.com

MIRIAM M. ROBINSON (RETIRED)

JAMES A. BATSON
BLAINE H. BORTNICK
ETHAN A. BRECHER
DAVID I. GREENBERGER
MICHAEL E. GRENERT
JAMES R. HUBBARD
JEFFREY L. LIDDLE
DAVID M. MAREK
CHRISTINE A. PALMIERI
MARC A. SUSSWEIN

JAMES W. HALTER
MARYANA A. KODNER
ANDREA M. PAPARELLA
REBECCA A. SAENGER
DAVID H. FELDSTEIN
SHERRY M. SHORE
JESSICA H. SAVAGE
MATTHEW J. MCDONALD
MARIA W. WONG
JENNIFER RODRIGUEZ*

*AWAITING ADMISSION TO THE BAR

February 4, 2010

The Honorable Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 14B
New York, New York 10007-1312

Re:   *Thara Thomas v. Euro RSCG Life, et al.*, Case No. 09 Civ. 5500 (JSR)

Dear Judge Rakoff:

This Court should deny Defendants' application to compel Plaintiff to produce a document to them, entitled "Deposition Outline, For The Deposition of Glass, Peter" (the "Document"). First, the attorney-client privilege protects the Document. Second, the attorney work-product doctrine protects the Document. Third, Defendants have not established that Plaintiff relied on the Document to refresh her memory. Fourth, the "interests of justice" do not compel production of the Document to Defendants, rather the "interests of justice" weigh against such disclosure.

## I.   FACTS

### A. The Origin Of The Document In Question

The Document is seventeen pages. It reflects communications between Thomas and me. We collectively wrote it only for the purpose of Thomas securing a combination of all of the following: my opinion on law; my legal services; and my assistance in this lawsuit. Embedded in the Document we collectively created over a period of time is both attorney-client privileged information and also attorney work-product. The Document contains Thomas's impressions and my own.

The Document is not a contemporaneous log Thomas created recounting her conversations with Peter Glass, former in-house counsel. (Attached as Exhibit A is a copy of certain portions of the transcript of the deposition of Thara Thomas held on January 20, 2010.) See Ex. A., Pl. Tr. p. 243-245. Rather, we collectively began creating the Document on December 18, 2009 (the date Shazzia Khan was originally scheduled to be deposed); we have both physically inputted words into the

LIDDLE & ROBINSON, L.L.P.
The Honorable Jed S. Rakoff                      -2-                         February 4, 2010

Document. I physically typed the first words of the Document as I listened to Thomas's confidential communication to me. (I am not referring to the physical first two pages of the Document, which were incidentally solely created by me in the latter stages of creating the Document). The majority of time spent creating the Document was in my office. See Ex. A, Pl. Tr. p. 238.

There are earlier drafts of the Document, however, the only draft of the Document that Thomas looked at prior to her deposition is the one that she submitted to the Court on January 27, 2010, for the Court's in camera inspection.) The last conversation Thomas had with Peter Glass, except for her deposition on December 11, 2009, however, was mid-October 2009, see Ex. A, Pl. Tr. p. 239-240 — just over two months before we began creating the Document and approximately eleven months after Thomas had retained me to represent her in connection with her employment with Defendants. From December 18, 2009 until approximately January 19, 2010, we continued to work on the Document in question and intend to work on it in the future. The Document is still what we both consider to be a "rough draft," rife with errors. For example, there is a typographical mistake in the Document that in a certain sentence having the opposite meaning. I am personally responsible for this mistake. Neither of us intended that this Document would ever be reviewed by individuals outside of our attorney-client relationship.

**B. Pertinent Facts Surrounding Peter Glass**

According to Defendant Donna Murphy, Defendant Euro RSCG Life ("ERL") terminated Peter Glass's employment "roughly" on December 16 or December 17, 2009. (Attached as Exhibit B is a copy of an excerpt of the transcript of the deposition of Murphy held on January 28, 2010.) See Ex. B., Murphy Tr. 80:25-81:5. ERL terminated Mr. Glass's employment because "[h]e divulged confidential information about this case to [Thomas]." Ex. B, Murphy Tr. 81:17-22. On December 22, 2009, the parties were before the Court. During this court appearance, I made certain statements to the Court relaying certain information Thomas had learned from Mr. Glass for the purpose of demonstrating the basis for believing Wynne has non-privileged information relevant and critical to this case and that the Court should allow Thomas to depose Nancy Wynne. On December 29, 2009, Defense counsel sent Plaintiff's counsel a letter, a copy of which is attached as Exhibit C. Defendants asserted that Defendant ERL has "no independent knowledge regarding" the statements Glass made to Thomas "other than what [I] and [Thomas] recently represented to ERL's counsel and to the Court and in Thomas's deposition." Ex. C. Defendants also asserted that "ERL is without knowledge or information sufficient to form a belief as to the truth of the [statements], and therefore denies the same." Id. Defendants also asserted that "in the event Mr. Glass disclosed any of the aforementioned information to Ms. Thomas, such information is not admissible and does not constitute an admission by ERL." Id.

On January 19, 2010, Defendants' counsel told me that Glass had "disappeared" and had vacated his apartment; this was two days before his scheduled deposition. Prior to this, Plaintiff was under Defendants' instruction not to contact Glass directly. See Ex. D, which is a copy of Defendants' Initial Disclosures, p. 5. Plaintiff then made several attempts to serve Glass at his last known address, to no avail. Comments Glass's neighbor made to Plaintiff's process server, however, suggest that Glass had been living at that address, just prior to Plaintiff's service attempts. (Attached as Exhibit E is a copy of an Affidavit Of Process Server, describing certain service attempts.) Plaintiff apparently just missed her opportunity at serving Glass at his last known address.

LIDDLE & ROBINSON, L.L.P.

The Honorable Jed S. Rakoff	-3-	February 4, 2010

At Thomas's second day of deposition on January 20, 2010, Defendants elected not to question Thomas on any conversations she had with Glass after approximately January 30, 2009. See Ex. A, Pl. Tr., p. 299-303 and p. 425-426. Indeed, Thomas raised this issue with opposing counsel during her deposition. She said: "[I] was curious if you wanted me to finish answering your question about the Peter Glass conversations, because we didn't go back to it after lunch." Defense counsel responded: "We'll get back to it maybe later if we have time. … [I]f there's something short that you want to tell me about, but I don't want to spend a lot of time on it. Ex. A, Pl. Tr. 425: 13-23. The last date of a conversation between Thomas and Glass that Thomas testified about was on approximately January 30, 2009. See Ex. A, Pl. Tr: 299-300.

## II.  LEGAL ARGUMENT

Only Rule 612(2) applies to the instant application; Thomas did not use any document while she was testifying. See Ex. A., Pl. Tr.

### A. The Document Is Protected By The Attorney-Client Privilege.

"Nothing in … Rule [612] [should] be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh [her] memory." Advisory Committee Notes, Fed.R.Evid. 612 (1974). In Suss v. MSX Int'l Eng'g Servs, Inc., the Court held that "[i]n applying Rule 612, courts must balance the tension between the disclosure needed for effective cross-examination and the protection against disclosure afforded by the relevant privilege." 212 F.R.D. 159, 163 (S.D.N.Y. 2002). "[M]aterials protected by the attorney-client privilege are discoverable only upon a showing of waiver." Id. The privilege applies if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Id. (quotations omitted). When "faced with a claim of attorney-client privilege" a court must make the following "two inquiries: (1) Was the privilege properly invoked? and (2) Did some action of the party seeking to invoke the privilege act as a waiver of the privilege." Id. at 163-164. "Applying this analysis to Rule 612, the relevant inquiry is not simply whether the documents were used to refresh the witness's recollection, but rather whether the documents were used in a manner which waived the attorney-client privilege." Id. at 164. An example of such waiver is "if privileged communications were disclosed to an individual outside the privileged relationship." 212 F.R.D. at 164, citing In re von Bulow, 828 F.2d 94, 102-103 (2d Cir. 1987). However, **"the privilege would not be lost if an individual were to review his own already privileged documents."** Suss, 212 F.R.D. at 164 (citation omitted) (emphasis added).

The Document is protected by the attorney-client privilege. Thomas, the asserted holder of the privilege, was my client at all times when we collectively created the Document, which reflects

LIDDLE & ROBINSON, L.L.P.

The Honorable Jed S. Rakoff           -4-           February 4, 2010

communications between us; my advice and impressions; and Thomas's impressions. The communications reflected in the Document were all made in connection with me acting as Thomas's lawyer and relate to facts Thomas informed me of without the presence of strangers for the purpose of securing a combination of all of the following: my opinion on law; my legal services; and my assistance in this lawsuit. None of the communications were made for the purpose of committing a crime or tort. Finally, Thomas has claimed the privilege, and it has not been waived.

Defendants' interpretation that "[e]ven under Suss," the Document "must be produced since Thomas admits she relied upon the [Document] for her testimony," D. Br., p. 3, is incorrect. Factually, Plaintiff did not admit she "relied upon the [Document] for her testimony." Rather, she testified she did not spend "long" looking at the Document, but rather "[a]pproximately 15 minutes." The document is seventeen pages; two of the pages do not describe Thomas's conversation with Glass. See Ex. A, Pl. Tr. 247.[1] Further, even if she did rely on the Document, the Suss court held: "**[e]ven** were the Court to allow disclosure of attorney-client communications under some circumstances, this would not be an appropriate case because movants have failed to demonstrate that the witnesses relied on the documents in question." 212 F.R.D. at 165 (emphasis added). Rather, the Suss court was merely providing one more basis that the documents should not disclosed. (Notably, as explained below, that same basis applies here as well.) Indeed, in Suss, the court held that it was a sufficient basis to withhold a document even if a witness had used the document to refresh her memory, if the document was protected by the attorney-client privilege and the privilege had not been waived. 212 F.R.D. at 162-163, quoting the Advisory Committee Notes, Fed.R.Evid. 612 (1974) ("[N]othing in the Rule [should] be considered as barring assertion of a privilege with respect to writings used by a witness to refresh his memory.")[2]

Defendants cite Urban Box Office Network v. Interfase Managers, 2006 WL 1004472 (S.D.N.Y.) as support. Urban Box, however, did not involve a Document that was created collectively by the client and legal counsel nor did it involve any inquiry pursuant to Federal Rule of Evidence 612. In Bank Hapoalim B.M. v. Am. Home Assurance Co., 1994 WL 119575 (S.D.N.Y.), cited by Defendants, D. Br., p. 4, the documents in question were not exchanged between and created collectively by the witness in question and legal counsel.

---

[1] Defendants make other misrepresentations of Thomas's testimony. They state that "Thomas admitted that she could not have effectively testified without the benefit of the review of the [Document] – what person could as there were 'so many' of them, as Thomas concedes," D. Br., p. 5, and "Thomas admits that it would be 'very difficult' for her to testify about the conversations 'because there were so many of them.'" D. Br., p. 4. These were not, however, Thomas's words. Thomas's actual testimony was "I may jump around because Peter and I had many conversations, and it's going to be very difficult for me to recount all of the conversations." Ex. A, Pl. Tr. 232: 16-19. Defendants also state "Thomas reviewed the [Document] to keep the alleged 'many' conversations straight so that she could 'accurately' answer questions," D. Br., p. 4, and that Thomas "admitted that she could not have effectively testified without the benefit of the review of the [Document]." Id. at 5. Neither of these statements are supported by the transcript of Thomas's deposition. See Ex. A.

[2] The Evidence Project at the American University's Washington College of Law has suggested that Rule 612 be revised to specifically include the following language: "If the writing used is protected by the attorney-client privilege, use of the writing to refresh recollection prior to trial does not constitute a waiver of that privilege." Rice, Paul R. and Delker, Neals-Erik William, Federal Rules of Evidence Advisory Committee, A Short History of Too Little Consequence, 191 F.R.D. 678 (2000), p. 23, fn. 102.

### B. The Document Is Also Protected By The Attorney Work-Product Doctrine.

Federal Rule of Civil Procedure 26(b)(3)(A) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney ... ). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Thus, this Court is "charged with assessing such things as 'substantial need' and 'undue hardship.'" Suss, 212 F.R.D. at 163. Here, Defendants do not have a "substantial need" for this Document in order to prepare their case, an assertion which is supported by a number of facts, including the following. Defendants chose at Thomas's deposition to not even explore conversations that Thomas had with Mr. Glass after January 30, 2010. See Ex. A, Pl. Tr., p. 299-303 and p. 425-426. The last conversation she had with Mr. Glass was in approximately mid-October 2009. Id. at 239-240. Defendants' argument that "Glass has been unavailable for his own deposition and the defendants cannot test the veracity of Thomas' own statements by examining him" is weakened by Defendants' failure to notify Plaintiff that they no longer controlled Mr. Glass. If they had, Plaintiff probably would have been able to serve Glass a deposition subpoena at his last known address, approximately ten blocks from Plaintiff's counsel's office. See Ex. E. Further, according to Murphy, ERL fired Glass because "[h]e divulged confidential information about this case to [Thomas]." Ex. B, Murphy Tr. 81:17-22. Presumably, Defendants questioned Glass, ERL's in-house counsel, about the communications before terminating his employment and were therefore able to, as they put it, "test the veracity" of Thomas's statements. D. Br., p. 5.

### C. Defendants Have Not Demonstrated Plaintiff "Relied On The Document[] In Question."

"'Relied upon' means more than simply reviewing." Id. "[A]ccess is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness." Advisory Committee Notes, Fed.R.Evid. 612 (1974). "Unless there is some demonstrated impact on the witness testimony, the witness cannot be deemed to have relied on the document." Suss, 212 F.R.D. at 165.

### D. Conclusion

For the above reasons, Plaintiff requests that the Court (1) deny Defendants' application to obtain a copy of the Document and (2) provide such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Andrea M. Paparella