UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
THARA THOMAS,

              Plaintiff,                                09 Civ. 05500 (JSR)

      -against-                         **AFFIDAVIT OF THARA THOMAS**

EURO RSCG LIFE; DONNA MURPHY; and
SHAZZIA KHAN,

              Defendants.
-------------------------------------------------------------- X

STATE OF NEW YORK      )
                                   : ss.:
COUNTY OF NEW YORK   )

THARA THOMAS, being duly sworn, states:

1.     I am the plaintiff in this action against Euro RSCG Life, Donna Murphy, and Shazzia Khan. I am familiar with the matters stated below and submit this affidavit in opposition to Defendants' motion for summary judgment.

2.     After Ginsberg's employment ended, ERL did not hire a new Chief Talent Officer.

3.     I commenced my second maternity leave on May 28, 2008. I returned to work on September 2, 2008.

4.     On Saturday, January 31, 2009, Jeff Hoffman blind copied me on an e-mail invitation he sent Scott Shelko for a meeting on February 3rd. During this meeting ERL was going to terminate Shelko's employment. Hoffman's e-mail to me was a roundabout way of informing me

that I myself was not being affected by the RIF, but should plan on attending the RIF meetings as representing HR.

5. Prior to February 2, 2009, I had managed training.

6. At the February 2, 2009 meeting, Murphy ordered me to immediately meet with Shazzia Khan and the Generalists who had reported to me before I went on maternity leave to discuss the logistics of the RIF. At the beginning of this meeting, Khan gave my team a PowerPoint deck that said Shazzia Khan is the "new lead of HR." They were shocked. Michele Coppa kept mouthing to me "I'm so sorry, I'm so sorry, what happened?"

7. That afternoon ERL informed the executive-level employees whose employment was being terminated as part of the RIF. My name was not on the release agreements. My name was typically on release agreements, especially for high-level terminations of employment.

8. In 2009 I did not serve on the Executive Leadership Committee.

9. On approximately February 17, 2009, I inquired about promoting the title of one of my direct reports, Joanna Maleszewski. Murphy immediately dismissed me, turned to Khan and said, "you're restructuring your team so you let me know."

10. Everyone with whom I worked knew that I had been the Head of Human Resources and that Khan now enjoyed this position. Indeed, when employees learned of Khan's promotion

2

they believed my employment with ERL must have terminated. After the RIF announcement went out announcing Khan as "new lead of HR," I ran into several ERL Executives who demonstrated surprise and happiness to see me. I ran into Gene Cavasos, a Senior Vice President. He said to me: "I thought you left!"

11. At the time Defendants directed me to go to Princeton, New Jersey, two days a week, I was still breast feeding and pumping breast milk during the day. My son was 9 months old. It was too difficult for me to continue breast pumping given that my new commute to Princeton, New Jersey from Brooklyn took me approximately 2 to 2-1/2 hours each way, and I would have to carry my breast pump equipment.

12. Khan, Cathy Infante, and David Paragamian knew I was breast pumping. I was very open about it. With respect to Paragamian, there was a meeting once that was approximately 4 hours and I told him during one of the breaks that I may be 5 or 10 minutes late in returning back to the meeting because I needed to pump.

13. In late February I was scheduled to go to Toronto to terminate an employee's employment. I scheduled my flight to allow time for me to meet with the controller the day before the termination meeting. Khan told me that the arrangement was unacceptable and ordered me to take a 6 p.m. flight. Never in my career at ERL did I have to justify my travel plans. Never had I been micromanaged so closely on how I managed my time.

14. After February 2, 2009, ERL, Murphy, and Khan continued to exclude me from ERL's decision making process with respect to organizational changes, initiatives, and decisions that I played a primary role in before I took maternity leave. For example, ERL excluded me with respect to decisions to: (1) terminate the employment of employees, including an employee who directly reported to me; (2) transfer employees from one ERL agency to another; and (3) promote employees. ERL informed my direct reports of certain of this information and directed they not inform me. For example, Peter Glass, ERL's in-house counsel, and Murphy, informed Michele Coppa, a direct report of mine, of at least two decisions to terminate employees' employment, including the terms of the separation agreements with respect to the two employees, but they expressly directed that Coppa not inform me of this information.

15. On approximately May 4, 2009, there was a Regional Meeting held at the Chelsea office. Defendants did not invite me to attend. I was invited to the Regional Meeting for the prior two years. In fact, at the 2007 Regional Meeting, there was an extra day for Heads of Department to attend which ERL invited me to attend; ERL did not invite Khan.

16. On May 19, 2009, Jeff Hoffman, President of Catapult, told me that there were no more available offices at Catapult and that I would need to use the Practice Leaders' offices, when they were not working at Catapult and were on client visits. Employees regularly acknowledged my intolerable working conditions. For example, on approximately August 11, 2009, Gina Vare-Haus, the Executive Assistant to Pat Chenot, Executive Vice President and Director of Client Services for Catapult, and Jeff Hoffman, joked about me not having an office at Catapult and referred to my resulting nickname, "Roaming Thara."

17. On approximately, June 1, 2009, Murphy informed me that ERL was raising the salary of all its employees who it had promoted in February 2009, including Khan. ERL did not raise my salary.

18. On approximately June 4, 2009, ERL held a meeting called the ERL Worldwide Benefits Renewal meeting. Khan and Murphy would not allow me to attend this meeting, even though I was invited to attend before my maternity leave. I was invited to attend in 2008.

19. After I complained of discrimination, Peter Glass told me "There are sharks swarming you." He also repeatedly said to me around this time, and before, that the actions Khan and Murphy have taken against me and others "[was] criminal!" He also said on numerous occasions to go to Catapult, work in the Chelsea office, do whatever I could to not be at 200 Madison where Khan sat. In approximately September or October 2009, Glass told me that things were "only going to get worse" for me. Glass also said, "imagine if I didn't talk to you? You would have nobody."

20. In September, 2009, the Partners did not invite me to present the HR business plan, which I had presented the year before.

21. On October 14, 2009, Murphy scheduled a meeting with me. Anthony Tramontana, the Senior Vice President of Finance, was present to serve as a "witness." Among other things, Murphy ordered me to log my hours; banned me from working in the Chelsea office, unless I was

specifically directed to do so; banned me from going to the doctor on my lunch hour; and told me I had been a "laughing stock" on a certain conference call because my phone got cut off during the call. Murphy then slammed closed the notebook she had been looking at during the meeting and said, "that's it, have a nice day."

I am familiar with the matters stated above and submit this affidavit in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

Dated: New York, New York
April 16, 2010

*Thara Thomas*
THARA THOMAS

SWORN AND SUBSCRIBED
TO BEFORE ME THIS
16th DAY OF APRIL 2010

*Rose M Reverendo*

ROSE M. REVERENDO
NOTARY PUBLIC, State of New York
No. 31-4908329
Qualified in New York County
Commission Expires 2/28/2014